# In the United States District Court for the Southern District of Georgia Brunswick Division

JOSHUA TAYLOR CHILLOUS[1]

 Plaintiff,

 v.

KOVATCH MOBILE EQUIPMENT
CORPORATION and ONSCENE
SOLUTIONS, LLC,

 Defendants.

CASE NO. 2:24-CV-49

## ORDER

Before the Court are motions for partial summary judgment filed separately by Defendant OnScene Solutions, LLC (hereinafter "OnScene") and Defendant Kovatch Mobile Equipment Corporation (hereinafter "KME"). Dkt. Nos. 53, 77. Plaintiff Joshua Chillous responded to both motions, dkt. nos. 60, 80, and Defendants replied, dkt. nos. 64, 83. For the reasons stated below, OnScene's motion is **DENIED** and KME's motion is partially **GRANTED** and partially **DENIED**.

---

[1] The Clerk is **DIRECTED** to correct the docket to reflect Plaintiff's legal name. Dkt. No. 78 at 6.

**BACKGROUND**

Plaintiff filed this personal injury action after he was injured by an allegedly defective sliding cargo tray attached to a firetruck located at Kings Bay Naval Base in St. Mary's, Georgia. Dkt. No. 1 ¶¶ 7-12. On June 16, 2022, Plaintiff, a civil firefighter employed by the Department of Defense, was attempting to access the cargo tray while gathering supplies for an emergency when the deployed tray fell to the ground, trapping his middle and ring finger and severing both fingers at the first joint. Dkt. No. 53-2 at 49:18-51:1; Dkt. No. 60-1 ¶¶ 1-6. A Naval Safety Specialist, Dean Merrill, later investigated the incident and reported that the screws of the tray door had failed, the screws being too short for the screw hold. Dkt. No. 53-3 at 6:17-7:3, 19:6-20:28. OnScene designed and built the cargo tray, including the stopping mechanism. Dkt. No. 60-1 ¶¶ 11-12. The tray was then affixed to the firetruck by the truck's manufacturer, KME, who then sold the truck to the Department of the Navy ("the Navy"). Dkt. No. 53-4 at 27:1-19, 69:7-23; Dkt. No. 61-1 ¶¶ 1-2.

The parties dispute when OnScene became aware of the potential failure of the stopping mechanism on the cargo trays, and the sufficiency of remedial efforts, if any, taken by Defendants. See, e.g., Dkt. No. 60-1 ¶¶ 13-15; Dkt. No. 61-1 ¶¶ 9-16, 42-47. The

2

record, viewed in the light most favorable to Plaintiff,[2] shows that OnScene had been aware of hazards that could result from a failure of the cargo tray stopping mechanism since the prototype phase of the product, which began around 2006. Dkt. No. 53-5 at 46:1-50:14, 49:3-12. During the week of December 21, 2014, OnScene became aware of a specific stopping mechanism defect on manufactured cargo trays when an internal team raised the issue. Id. at 82:5-25. OnScene then began contacting affected manufacturing customers. Id. at 84:19-85:4.

In an email sent on January 6, 2015, the Director of Navy Fire and Emergency Services, Carl Glover Jr., contacted KME with concerns regarding an incident involving a defective stopping mechanism on a cargo tray from one of KME's trucks at a different naval site than Kings Bay where Plaintiff was injured. Dkt. No. 53-6 at 8:7-9, 20:14-23:13, 27:1-28:21. The email subject line identified the order number of the defective truck.[3] Dkt. No. 65-2 ¶¶ 24-26. A KME employee, Andrew Yenser, responded to the Navy's concern and acted as a liaison between OnScene and the Navy. Dkt. No. 65-2 ¶¶ 14-16.

---

[2] At the summary judgment stage, the Court must view all facts in the light most favorable to the non-moving party and draw all inferences in his favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).
[3] Notably, the Kings Bay heavy rescue truck at issue in this case derived from the same order. Dkt. No. 65-2 ¶¶ 24-26.

One of Yenser's emails reported that he had spoken with OnScene who had identified several trays with "short bolt stops," and Yenser relayed to the Navy that "[w]e are in the process to identify trucks affected." Dkt. No. 53-5 at 44. Further, Yenser stated that "[o]nce identified, OnScene committed to sending longer bolts to the locations." Id. Yenser also reported that he had communicated with "[KME's] Product Orientation specialist who is currently at Kings Point performing training on this vehicle and have him evaluating the trays on that particular truck." Dkt. No. 53-7 at 13:2-9. Though it is not perfectly clear whether Yenser was referring to Kings Bay Naval Base with his mention of "Kings Point," Plaintiff and KME agree that (1) there is no naval facility named "Kings Point," (2) Yenser stated that the reference to Kings Point was related to "the vehicles getting delivered from that contract," and (3) the truck discussed in the emails derived from the same sales order as the truck delivered to Kings Bay Naval Base—the truck at issue in this case. Dkt. No. 65-2 ¶¶ 22-26. The maintenance records of the Kings Bay vehicle do not show that any inspection or maintenance was performed on the truck pursuant to Mr. Yenser's email. Dkt. No. 65-2 ¶¶ 37-38.

In a later email, Yenser reported that OnScene had identified three trucks at Norfolk, Groton, and Guam with affected hardware. Dkt. No. 53-5 at 42-43. After receiving that last communication, Glover believed that the issue was resolved and later recalled

4

that the Navy relied on KME to identify the trucks with defective stops. Dkt. No. 53-6 at 41-44. Glover testified that a "Chief Alert"—a way for the Navy to disseminate information regarding a truck malfunction—would have been sent out if he had been informed that the number of trucks affected was uncertain. Dkt. No. 65-2 at 47-50; Dkt. No. 53-6 at 48:21-49:10.

## PROCEDURAL HISTORY

Plaintiff initially filed his complaint on March 27, 2024. Dkt. No. 1. The complaint contains claims for strict liability (Count One), negligence (Count Two), breach of warranty (Count Three), and punitive damages (Count Four). Dkt. No. 1. On May 13, 2025, OnScene sought partial summary judgement as to Count Four. Dkt. No. 53.

KME submitted its own motion for partial summary judgement as to Counts One, Three, and Four. Dkt. No. 55. Plaintiff responded conceding summary judgement in favor KME as to Counts One, Three, and Four,[4] but opposed a perceived challenge to Count Two. Dkt. No. 61 at 1-2. KME then filed a reply to that response calling for partial summary judgement as to Count Two. Dkt. No. 65. Later, KME

---

[4] Because Plaintiff concedes summary judgment is warranted as to Counts One, Three, and Four against KME, KME's motion is **GRANTED** as to those claims.

submitted an amended motion for partial summary judgment as to Count Two. Dkt. No. 77.[5]

## LEGAL AUTHORITY

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan, 572 U.S. at 657.

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this

---

[5] KME was not granted leave to amend, and the amendment came after the deadline for filing dispositive motions had passed. Dkt. No. 15 (setting May 15, 2025 as the deadline for filing civil motions); Dkt. No. 77 (amended motion for partial summary judgment submitted on July 24, 2025). However, Plaintiff did not contest the timeliness of KME's amended motion.

burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

**DISCUSSION**

**I.   OnScene is not entitled to summary judgement as to Plaintiff's claim for punitive damages (Count Four).**

In Georgia, the award of punitive damages is governed by O.C.G.A. § 51-12-5.1. The statute provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Id. § 51-12-5.1(b). A party's negligence, even gross negligence, cannot support an award of punitive damages. Troutman v. B.C.B. Co., 433 S.E.2d 73, 75 (Ga. Ct. App. 1993). However, the issue of punitive damages is usually a matter left to the jury, and such damages may be awarded "even where the clear and convincing evidence only creates an inference of the defendant's conscious indifference to the consequences of his acts." Tookes v. Murray, 678 S.E.2d 209, 213 (Ga. Ct. App. 2009).

In its motion for partial summary judgment as to Count Four, punitive damages, OnScene argues that Plaintiff has not provided sufficient evidence to show that OnScene exhibited "the entire

want of care sufficient to raise the presumption of conscious indifference." Dkt. No. 53-1 at 12. To support its motion, OnScene argues that there is no evidence that OnScene's actions were motivated by pecuniary gain, id. at 11–12, and record evidence of OnScene's response to the Navy's 2015 email cannot possibly create an inference of intentional concealment or conscious indifference, id. at 8–11. This both misconstrues the standard for allowing a jury to consider awarding punitive damages and overlooks factual disputes regarding (1) the cargo tray's inception and (2) OnScene's response to the Navy's 2015 email.

**A. Evidence of Pecuniary Gain Not Required for Punitive Damages Award**

As a threshold matter, with regard to OnScene's argument that there is no evidence its actions (or inactions) were motivated by pecuniary gain, OnScene has identified no case law requiring evidence of profit motivation for a punitive damages claim to survive summary judgment. OnScene cites Bunch v. Pacific Cycle, Inc. as an example where summary judgment was granted because, in part, "nothing indicates that Defendant was motivated by profits or monetary gain to make its design decision." No. 4:13-cv-36, 2014 WL 12495343 at *11 (N.D. Ga. Apr. 14, 2014). The phrase "in part" is critical to the logic of the previous sentence. The Bunch court's full justification for granting summary judgment on punitive damages was that there was no evidence that the defendant

"acted wantonly or otherwise culpably," that the defendant "was aware that it was placing its customers at a substantial risk of harm," or "that Defendant was aware of prior, similar injuries" involving a similar product design. Id. Likewise, in Hernandez v. Crown Equipment Corp., lack of profit motivation was one of several grounds for finding that summary judgment on the issue of punitive damages was appropriate. 92 F. Supp. 3d 1325, 1356–57 (M.D. Ga. 2015). Bunch and Hernandez demonstrate that profit motivation involved in a less safe design is *part* of the whole picture when looking at punitive damages, not that profit motivation is *necessary* for a jury to award punitive damages.   Thus, this argument for summary judgment as to Plaintiff's claim for punitive damages fails.

**B. The Cargo Tray's Initial Design and Testing**

The Court now turns to OnScene's general argument that there is a lack of evidence to show OnScene exhibited "the entire want of care sufficient to raise the presumption of conscious indifference" required for an award of punitive damages. Dkt. No. 53-1 at 12. In response, Plaintiff argues that OnScene's initial design of the cargo tray stopping mechanism combined with a perceived lack of appropriate testing shows that OnScene was consciously indifferent towards safety issues inherent in the product. Dkt. No. 60 at 5–11. Though Plaintiff's case may appear to center around an alleged manufacturing defect in the stopping

9

mechanism, the purportedly short screws, Plaintiff also alleges design defects with respect to the stopping mechanism. See Dkt. No. 1 ¶¶ 24, 31 (alleging that Defendants are liable for a defect in the design of the cargo tray); Dkt. No. 78 (stating in the consolidated pretrial order the allegation that OnScene is liable to Plaintiff due, in part, to the design of the cargo tray).

To support his claim for punitive damages with respect to the design of the cargo tray, Plaintiff proffers testimony by his own expert, as well as KME's expert and OnScene's expert, that the designed screw length of one inch results in a length of engagement for the stopping mechanism that falls short of general industry guidelines. Id. at 7; Dkt. No. 60-4 at 44:19-24, 46:18-10 (OnScene's expert); Dkt. No. 58-1 at 56:3-7 (KME's expert); Dkt. No. 58-2 at 43:14-44:1 (Plaintiff's expert). Plaintiff also points to deposition testimony provided by an OnScene representative that the cargo tray was approved by non-engineers, after alleged tests that did not include calculations of expected force exerted in the field, even though OnScene was aware of the danger of a defective cargo tray at the inception of the product. Dkt. No. 60 at 7-10; Dkt. No. 53-5 at 9:23-10:01, 46-50:14, 49:3-12, 51:2-15, 54:25-55:4, 56:2-6. Further, OnScene retained no documentation of the tests. Id. at 24:20-25:7, 49:24-50:14. Nor did OnScene retain any design drawings or documents identifying the defective units. Id. at 24:20-25:7, 63:13-64:7.

From these facts, a reasonable jury could infer that OnScene maintained a conscious indifference to the consequences of a defective stopping mechanism during the design and testing of the product. There are many cases where courts applying Georgia law have found similar facts defeated summary judgment with respect to punitive damages. For example, in Williams v. Tristar Products, Inc., the court found that summary judgement on the issue of punitive damages was inappropriate in a products liability case where there was evidence that the manufacturer knew of a potential product defect and took no action to remedy it. 418 F. Supp. 3d 1212, 1230 (M.D. Ga. 2019). Similarly, in Mascarenas v. Cooper Tire & Rubber Co., the court found that summary judgment on the issue of punitive damages was inappropriate when there was evidence that the manufacturer knew about a safety defect and questions surrounded the sufficiency of subsequent product testing. 643 F. Supp. 2d 1363 (S.D. Ga. 2009).

## C. OnScene's Failure to Warn after Defects Discovered

Next, OnScene argues the record evidence of its response to the Navy's 2015 contact cannot possibly create the inference of intentional concealment or conscious indifference required for an award of punitive damages. Dkt. No. 53-1 at 8–11.

Plaintiff responds that punitive damages are warranted because OnScene failed to take proper action to warn or mitigate the risk of harm once the company was on notice of similar

11

incidents involving the cargo tray. Dkt. No. 60 at 12-19. The evidence, viewed in the light most favorable to Plaintiff, shows that OnScene knew of the defective stopping mechanism issue in December 2014. Dkt. No. 53-5 at 82:5-25. Then OnScene was notified through the Navy's contact with KME in January 2015 of a defective stopping mechanism affecting a similar truck sold under the same contract as the Kings Bay truck.  Dkt. No. 60-1 ¶¶ 22-25. Yet, OnScene failed to identify the truck at issue in this case, even though the scope of defects was limited to the seven-month-tenure of one OnScene employee who was solely responsible for manufacturing the cargo trays with the wrong screw length during that time. Id. ¶ 24 (email from KME to the Navy reporting that OnScene had identified three trucks with short hardware, Norfolk, Groton, and Guam, omitting the truck at Kings Bay); Dkt. No. 53-5 at 6:16-22; 61:9-11; 63:8-23; 64:10-66:21 (OnScene representative testifying that the process to identify the defective cargo trays would be to trace the trays to the work dates of the responsible employee). Moreover, OnScene's identification of other defective trucks may have led KME to believe that the Kings Bay truck was safe. Dkt. No. 53-7 at 59:8-13 (testifying that KME would have relied on the manufacturer to inform them of which units were affected). Finally, OnScene allegedly failed to retain important records, including the responsible employee's personnel file and documents identifying the cargo trays he assembled even after

OnScene knew of potential failures. Dkt. No. 53-5 at 67:1-11; 68:25-70:7. From these facts, a reasonable jury could find that OnScene acted with a conscious indifference to the safety consequences of a known defect. Accordingly, OnScene's motion for summary judgment as to Plaintiff's claim for punitive damages (Count Four) is **DENIED.**

II.   **KME is not entitled to summary judgment as to Plaintiff's negligence claim (Count Two).**

Presently, KME's motion for partial summary judgment applies only to Count Two, Plaintiff's negligence claim, as Plaintiff has conceded his other claims against KME. See Dkt. No. 61 at 1-2. In the consolidated pre-trial order, Plaintiff clarified his negligence claim:

> KME voluntarily assumed a duty to exercise ordinary care in their inspection and investigation of defective or potentially defective OSS [OnScene] cargo trays contained in vehicles that KME sold to the [Department of Defense]. KME breached their assumed duty. As a direct and proximate cause, Plaintiff Chillous incurred damages.

Dkt. No. 78 at 14. KME's arguments in favor of summary judgment as to Plaintiff's negligence claim are broadly organized into three categories: (1) KME did not assume a duty to inspect, (2) there is no genuine dispute of material fact as to causation, and (3) Plaintiff's negligence claim is barred by the statute of limitations. Because the claim is within the applicable statute of limitations and genuine disputes of material fact remain as to

13

causation and the creation of a legal duty to inspect, summary judgment as to Plaintiff's negligence claim against KME is inappropriate.

**A. Because the Navy arguably relied on KME's statements regarding an inspection of the Kings Bay vehicle, KME conceivably had a duty to exercise ordinary care in conducting its investigation.**

KME argues that it did not owe a duty to Plaintiff to inspect the cargo tray in the Kings Bay vehicle because (1) if KME owed a duty to anyone, it was the Navy and not Plaintiff, dkt. no. 83 at 4 n.8; (2) Plaintiff did not allege that he relied on KME's inspection, id. at 7, 10; (3) there is no evidence Plaintiff's employer, the Navy, relied on KME's inspection; and (4) there was no inspection, so there could be no negligent inspection. The Court addresses KME's arguments in turn.

**1. Privity**

KME argues that it did not owe a duty to Plaintiff because it was not in privity with Plaintiff, and because neither Plaintiff nor the Navy relied on KME's statements. Dkt. No. 83 at 4 n.8, 5–7, 10–11. Examining the basis for assuming a duty to exercise ordinary care aids in assessing both arguments.

In cases involving liability to third persons for negligent performance of an undertaking, Georgia has adopted the Second Restatement of Torts Section 324A (hereinafter "Section 324A"):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his

things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a)   his failure to exercise reasonable care increases the risk of such harm, or

    (b)   he has undertaken to perform a duty owed by the other to the third person, or

    (c)   the harm is suffered because of reliance of the other or the third person upon the undertaking.

Huggins v. Aetna Cas. & Sur. Co., 264 S.E.2d 191, 192 (Ga. 1980) (quoting Restatement (Second) of Torts § 324A (A.L.I. 1965)). Whether a duty exists in a negligence action is typically a matter of law to be decided by the trial court. See, e.g., Rasnick v. Krishna Hosp., Inc., 713 S.E.2d 835, 837 (Ga. 2011). However, where questions of fact exist as to the applicability of Section 324A, summary judgment on the issue of duty is not appropriate. See Pappas Rest., Inc. v. Welch, 901 S.E.2d 751, 760 (Ga. Ct. App. 2024) (concluding, with respect to that particular case, that the "preliminary questions regarding the application of Section 324A are questions for the jury"), cert. denied (Sept. 17, 2024).

Despite KME's argument to the contrary, privity is not required between the undertaker of a duty and "the third person" when applying Section 324A. Cf. Adams v. APAC-Ga., Inc., 511 S.E.2d 581, 583 n.5 (Ga. Ct. App. 1999) (noting that Section 324A is an exception to the rule that a right of action in tort resulting from the violation of a related contractual duty is typically

15

confined to those in privity to the contract). Even though a failure to inspect may have breached a contractual duty between KME and its customer, Plaintiff's employer, such a contractual relationship is not necessary where KME also had a duty of care under tort law to Plaintiff, as it may be found to have under Section 324A. See Sims v. Am. Cas. Co., 206 S.E.2d 121, 133 (Ga. Ct. App. 1974), aff'd, 209 S.E.2d 61 (Ga. 1974) ("[I]n appropriate circumstances, a duty of care may be called for by contract and may be required by tort law at the same time, and where this is true plaintiff requires no privity to maintain a tort action."). To support its arguments related to privity, KME cites Omstead v. BPG Inspection, LLC, 903 S.E.2d 7 (Ga. 2024). However, as discussed below, Omstead does not help answer the question of whether KME owed a duty to plaintiff.

In Omstead, Mr. Omstead contracted with the defendant home inspection company to inspect a home and property, including a retaining wall, which Mr. Omstead and his wife desired to purchase. Id. at 10-11. The contract between Mr. Omstead and the home inspection company contained a one-year limitation provision providing that Mr. Omstead could not sue the inspection company after one year from the inspection, including for tort actions. Id. Over one year later, after the Omsteads purchased the property, Mr. Omstead died when the retaining wall collapsed on him. Id. Mrs. Omstead then sued the inspection company for, among

16

other claims, wrongful death. Id. at 11. The Georgia Supreme Court found that the contractual one-year limitation barred Mrs. Omstead's claims. Id. 13–14. In a hearing on its motion for summary judgment, KME appeared to argue that Omstead stands for the proposition that where there is a contract related to an inspection, there cannot be a third-party negligent inspection action; but such a holding does not appear in Omstead. Rather, in Omstead, the plaintiff's claims were subject to a waiver contained in a contract that her late husband had signed.[6] Omstead is, therefore, not analogous to this case, where, as KME itself asserts, "[i]t is undisputed that Plaintiff was not in privity of contract with KME (or OSS)." See, e.g., Dkt. No. 55-1 at 15. Importantly, KME cites no case law wherein privity is applied in the negligent undertaking context. As such, KME's argument related to privity fails.

## 2. Reliance

Next, KME correctly points out that subsection (a) of Section 324A applies only when "a nonhazardous condition is made hazardous

---

[6] In Georgia, "[t]he derivative nature of wrongful death actions has been recognized repeatedly," and "waivers made by decedents [bind] their beneficiaries, despite the fact that the beneficiaries were not parties to the agreements in question." United Health Servs. of Ga., Inc. v. Norton, 797 S.E.2d 825, 827 (Ga. 2017) (internal citation omitted) (citing Currid v. DeKalb State Court Probation Dep't, 674 S.E.2d 894 (2009)).

through the negligence of a person who changed its condition or caused it to be changed." BP Expl. & Oil, Inc. v. Jones, 558 S.E.2d 398, 405 (Ga. Ct. App. 2001). Here, Plaintiff is not alleging that KME changed the condition of the truck by failing to inspect it, so subsection (a) is inapplicable. Instead, the parties' dispute centers around the applicability of subsection (c) and the embedded concept of reliance. Dkt. No. 83 at 5-7, 10-11; Dkt. No. 80 at 4-5; Restatement (Second) of Torts § 324A(c) (imposing liability when "harm is suffered because of reliance of the other or the third person upon the undertaking").

KME argues that subsection (c) is inapplicable to this case because Plaintiff did not allege in the complaint that either he or the Navy relied on any inspection. Dkt. No. 83 at 10-11. The Court concludes KME's argument that Plaintiff must plead reliance in his complaint is unsupported.

To show that gratuitous undertaking cases require a plaintiff to plead reliance, KME cites Howell v. United States, but Howell speaks only to the evidentiary requirements of a 324A claim, not the pleading requirements. 932 F.2d 915, 919 (11th Cir. 1991). The only case KME cites which stands for the proposition that a heightened pleading standard applies to cases claiming liability under Section 324A is a federal Southern District of New York case applying Tennessee law, not Georgia law, in a bankruptcy proceeding. Dkt. No. 83 at 7 (citing In re Alper Holdings USA,

18

Inc., 398 B.R. 736, 756 (S.D.N.Y. 2008)). Indeed, even that case bases its holding on "proofs of claim" and "attachments" to the pleading. In re Alper Holdings USA, Inc., 398 B.R. at 756.

Further, a heightened pleading requirement for a claim of liability undertaking would be illogical. The facts of this case demonstrate why. If Plaintiff's claim had failed at the pleading stage because he did not plead reliance, his claim could never have proceeded to discovery during which he learned from the Navy's emails with KME that the same mechanical failure at issue in this case existed in 2015 *and* that KME arguably implied that the Kings Bay vehicle was being evaluated. See Dkt. No. 53-5 at 44; Dkt. No. 53-7 at 13:2–9; Dkt. No. 65-2 ¶¶ 22-26. Communications such as these between entities that might show reliance by one entity on another are often obscure to the third persons Section 324A endeavors to protect.

To the extent that KME argues there is insufficient evidence in the record to find reliance on the part of Plaintiff, that argument also fails. First, under Section 324A, there is no requirement that a plaintiff, the "third person," rely on the alleged gratuitous undertaking. Instead, the requirement is that "the harm is suffered because of reliance of the other **or** the third person upon the undertaking." Section 324A(c) (emphasis added). The "other" here is the party to whom the defendant rendered services, in this case, the Navy. The disjunctive "or" in

19

subsection (c) means that if *either* Plaintiff *or* the Navy relied on a negligently performed undertaking by KME, liability would attach. See Pappas Rest., Inc., 901 S.E.2d at 760; Restatement (Second) of Torts § 324A, comment e. Therefore, there is no need for Plaintiff to show that he relied on KME's representations of an inspection.

Here, Plaintiff has presented facts sufficient for a reasonable jury to find that the Navy detrimentally relied on KME's representations that it was conducting an inspection of the Kings Bay vehicle and that KME had identified the trucks with defective stops. After receiving a communication identifying the other defective trucks, the Director of Navy Fire and Emergency Services understood that the issue was resolved and testified that the Navy relied on KME to identify the trucks with defective stops. Dkt. 53-5 at 42–43; Dkt. No. 53-6 at 41–44. The Director testified that a "Chief Alert"—a way for the Navy to disseminate information regarding a truck malfunction—would have been sent out if he had been informed that the number of trucks affected was uncertain. Dkt. No. 65-2 at 47–50; Dkt. No. 53-6 at 48:21–49:10. As KME correctly points out, a jury may infer reliance based on circumstantial evidence, and employer reliance must be shown through evidence of a "change in position" by "neglecting or reducing its own safety practices" based on the undertaking. Phillips v. Liberty Mut. Ins. Co., 813 F.2d 1173, 1175 (11th Cir.

20

1987). Here, a reasonable jury could infer that the Navy reduced its own safety practices, the sending of "Chief Alerts," due to representations by KME.

### 3. Whether an Inspection Actually Occurred

Finally, with respect to the issue of duty, KME states that "a condition precedent to negligent inspection is an actual inspection." Dkt. No. 83 at 9. KME does not support this statement with case law, nor does the statement bear out logically. Section 324A requires only that "one who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking." "Undertake" is a verb defined as (1) "to take upon oneself: set about: attempt," (2) "to put oneself under obligation to perform," or (3) "guarantee, promise." See Undertake, Merriam-Webster (Dec. 7, 2025), https://www.merriam-webster.com/dictionary/undertake. Once an entity obligates itself to perform an inspection of safety equipment, it would be absurd to conclude that the entity could escape liability by not completing the inspection at all. A duty to inspect with ordinary care does not incur only when the inspection is performed. Under Section 324A, a duty to inspect with ordinary care incurs when a party begins or puts itself under an obligation to perform an inspection for another when it should

21

know that the inspection is necessary for the protection of the other or third persons, and the other relies on that inspection. In this case, a reasonable jury could conclude that KME undertook to inspect the Kings Bay truck based on its representations to the Navy.

**B. Proximate Cause**

KME argues that even if it had a duty to inspect the truck or identify the truck as an affected unit, and that duty was breached, any breach could not be the cause of Plaintiff's injury because the injury was remote in time and space. Dkt. No. 83 at 9–15. To demonstrate that Plaintiff's injury was remote from any breach, KME points to the length of time between KME's 2015 communications with the Navy and Plaintiff's 2022 injury. Id. at 11–12. Plaintiff argues that KME's breach of its duty to inspect the Kings Bay truck or identify the truck as an affected unit was the cause of Plaintiff's injury. Dkt. No. 61 at 16.

According to common law, a plaintiff in any tort case must prove that the wrongful conduct of the defendant is the legal cause of his injuries, and to prove causation, the plaintiff must show that the wrongdoing is both a cause in fact and a proximate cause of the injuries. Strength v. Lovett, 714 S.E.2d 723, 727 (Ga. Ct. App. 2011). KME disputes that the breach was the proximate cause of the injury. The Georgia Court of Appeals stated the rule for determining proximate cause as follows:

22

> [T]he injury must be the natural and probable consequence of the [wrongful conduct], such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong-doer as likely to flow from his act. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

Strength v. Lovett, 714 S.E.2d 723, 727 (Ga. Ct. App. 2011) (alteration in original) (quoting Ga. Dep't of Hum. Res. v. Bulbalia, 694 S.E.2d 115, 118 (Ga. Ct. App. 2010)). "Although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases." McAuley v. Wills, 303 S.E.2d 258, 260–61 (Ga. 1983).

This case is neither plain nor undisputed. The evidence, viewed in the light most favorable to Plaintiff, shows that the 2015 emails between the Navy and KME notified KME of a defective stopping mechanism on a truck similar to the one at issue. Dkt. No. 53-6 at 8:7–9; 20:14–23:13, 27:01–28:21; Dkt. No. 65-2 ¶¶ 24–26. The emails further demonstrate that KME was aware, through its communications with OnScene, about a known "short bolt stops" issue. Dkt. No. 53-5 at 44. The record evidence also shows that, after Plaintiff's injury, an investigation by a Naval Safety Specialist reported that the screws of the tray door had failed, and the screws therein were too short for the screw hold. Dkt. 53-3 at 6:17–7:3, 19:6–20:28.

23

From these facts, a reasonable jury could conclude that KME's failure to inspect the Kings Bay truck or identify the Kings Bay truck as having a defective cargo tray would foreseeably lead to Plaintiff's injury. The bolt stops were already a safety concern when KME reported that they were evaluating the Kings Bay truck and working to identify defective trucks. The natural and probable consequence of not inspecting a truck with a potential defect is an injury resulting from the defect.

## C. Statute of Limitations

KME next argues that the statute of limitations bars Plaintiff's negligence claim because the alleged inspection would have occurred in 2015, and KME's duty to inspect, if any, ran only to the Navy, not its employees. Dkt. No. 65 at 3 n.4; Dkt. No. 83 at 15–16. Plaintiff argues that the "discovery rule" applies, which would toll the statute of limitations until Plaintiff learned the cause of the injury. Dkt. No. 80 at 4. Both parties misinterpret the case law on this issue.

First, the "discovery rule" is a rule that applies only in the context of "continuing torts" where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct. M.H.D. v. Westminster Sch., 172 F.3d 797, 804–05 (11th Cir. 1999) (citing Bitterman v. Emory Univ., 333 S.E.2d 378, 379 (Ga. Ct. App. 1985)). For example, it applies in the context of lead fume exposure, see King v. Seitzingers, Inc., 287 S.E.2d 252,

253-54, 255 (Ga. Ct. App. 1981), but not in most medical malpractice cases, see Luem v. Johnson, 574 S.E.2d 835, 839 (Ga. Ct. App. 2002) ("[T]he discovery rule cannot be applied to Georgia's current medical malpractice statute of limitation, even in a case in which the plaintiff could not reasonably be expected to have known that her legal rights had been invaded until she discovered the causal relationship between the doctor's negligence and her injury."). But see Parker v. Vaughan, 183 S.E.2d 605, 607 (Ga. Ct. App. 1971) (applying the discovery rule in the limited medical malpractice context where a foreign object is left in a patient's body). Here, Plaintiff's injury, a sudden severing of a length of his fingers, cannot reasonably be construed as a continuing tort, so the discovery rule does not apply.

In personal injury cases, O.C.G.A. § 9-3-3 establishes the statute of limitations as "two years after the right of action accrues." "On a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which time the tort is complete." Everhart v. Rich's, Inc., 194 S.E.2d 425, 428 (Ga. 1972). Here, it is undisputed that Plaintiff was injured on June 16, 2022. Dkt. No. 53-2 at 49:18-51:1; Dkt. No. 60-1 ¶¶ 1-6. Plaintiff filed this action on March 27, 2024, within two years of his injury. Dkt. No. 1.

KME argues that the cause of action accrues at the time of the alleged negligent act, not at the time of injury. Dkt. No. 95 at 4-5. To support this, KME first cites Wilcher v. Redding Swainsboro Ford Lincoln Mercury, Inc., 743 S.E.2d 27 (Ga. Ct. App. 2013). Wilcher, however, does not discuss the timing of when a claim accrues—in fact, it does not discuss claim accrual at all. See generally id. (analyzing vehicle dealers' duties to inspect and whether such inspections give rise to liability). KME then cites Omstead, the same case on which KME relied for its privity arguments. 903 S.E.2d. at 13. Critically, Omstead better supports the *opposite* position. In Omstead, the court found that a wrongful death claim was barred by a contractual limitation provision, even though the wrongful death claim accrued when the death occurred, which was after that limitation expired. Id. at 13, 17 ("As relevant here, Omstead asserts a claim for wrongful death, which 'does not accrue until the death occurs[.]'" (quoting Williams v. Ga. Dep't of Human Res., 532 S.E.2d 401 (2000))). Omstead's acknowledgment that a wrongful death claim accrues when the death occurs comports with the general rule stated above: that a personal injury claim generally accrues when the injury caused by a defendant's beach of duty occurs.

KME also argues that any duty it might have had with respect to an inspection of the cargo tray would have been owed to Plaintiff's employer, who bought the truck, and not Plaintiff

himself, so, by its logic, the statute of limitations would begin from the date of the alleged inspection in 2015. Dkt. No. 83 at 15-16. However, as discussed supra, KME arguably owed a duty to Plaintiff as a third person under Section 324A, so this argument fails. Plaintiff's right of action accrued when he was injured in June 2022, and he filed suit within the two-year window required by O.C.G.A. § 9-3-3. Therefore, his claim is within the statute of limitations for personal injury claims. Accordingly, KME's motion for summary judgment as to Plaintiff's negligence claim (Count Two) is **DENIED.**

## CONCLUSION

For the reasons stated above, OnScene's motion for summary judgment as to Plaintiff's claim of punitive damages (Count Four), dkt. no. 53, and KME's motion for summary judgment as to Plaintiff's negligence claim (Count Two), dkt. no. 77, are **DENIED.** Because Plaintiff conceded summary judgement in favor of KME as to Counts One, Three, and Four, KME's motion for summary judgment as to those counts is **GRANTED.** Dkt. No. 55.

**SO ORDERED,** this 12th day of February, 2026.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

27